**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMRAPUR, INC. d/b/a VENZIO JEWELERS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON CONTROLS SECURITY SOLUTIONS, LLC f/k/a TYCO INTEGRATED SECURITY, LLC, <br><br> Defendant. | Civil Action No. 25-2870 (MAS) (JBD) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendant Johnson Controls Security Solutions, LLC f/k/a Tyco Integrated Security, LLC's ("Defendant") Motion to Dismiss (ECF No. 7) Plaintiffs Amrapur, Inc. d/b/a Venzio Jewelers ("Venzio") and Jewelers Mutual Insurance Company, S.I.'s ("Jewelers") (collectively, "Plaintiffs") Complaint (ECF No. 1-2). Plaintiffs opposed (ECF No. 13), Defendant replied (ECF No. 19), and Plaintiffs filed a Motion for Leave to File a Sur-Reply (ECF No. 20).[1] The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Court grants Defendant's Motion to Dismiss.

---

[1] For good cause shown, Plaintiffs' Motion for Leave to File Sur-Reply is granted, and the proposed sur-reply appended to that motion as Exhibit 2 will be considered in ruling on Defendant's Motion to Dismiss. (*See* Pls.' Mot. Leave Sur-Reply, ECF No. 20.)

I.    **BACKGROUND**[2]

A.    **Factual Background**

This matter involves a dispute about an alarm system (the "Alarm System") that Venzio alleges did not work properly during a burglary. (*See generally* Compl., ECF No. 1-2.) Venzio operates a retail jewelry business in the Ocean County Mall in Toms River, New Jersey (the "Property"). (*Id.* ¶ 5.) Jewelers issued insurance policy number 55-001505 (the "Policy") which insured the Property and "its business personal property, including jewelry inventory." (*Id.* ¶ 6.) On or about March 7, 2017, Venzio entered into a contract (the "2017 Agreement") with Defendant who agreed to install, maintain, and remotely monitor the Alarm System, including transmitting signals received from the Alarm System to law enforcement and designated Venzio representatives. (*Id.* ¶ 21.) As part of its contractual obligations, Defendant was required to ensure that the Alarm System was, at all times, a "U.L. [Underwriters Laboratories] Certified" system. (*Id.* ¶ 22.) A U.L. certified ("U.L. Certified") system is required to include line security ("Line Security"). (*Id.* ¶ 23.) "Line Security" requires that the lines of communication between an alarm system and the remote monitoring station be tested automatically at periodic intervals no greater than 360 seconds, to verify that there has been no interruption in or compromise of the lines of communication. (*Id.* ¶ 24.) If the periodic, automatic testing of a burglar alarm system equipped with Line Security reveals that there has been an interruption in or compromise of the lines of communication, then there is automatic notification of this interruption to the alarm monitoring station, which is then required to relay such notification to law enforcement, thus triggering a law enforcement response. (*Id.* ¶ 25.) U.L. certification—which includes Line Security—was required in order for Venzio to

---

[2] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

procure and maintain insurance on the Property and the inventory of jewelry maintained there. (*Id.* ¶¶ 26-27.) The Alarm System, however, was not equipped with Line Security, and the lines, instead, were tested at intervals of twenty-four hours or longer. (*Id.* ¶ 28.) An alarm system not equipped with Line Security is less complex and easier to compromise. (*See id.*)

On the evening of March 27, 2024, the Property closed normally for business at approximately 8:00 p.m. (*Id.* ¶ 7.) The employees of Venzio on duty at the time armed the Alarm System, secured and locked the Property, and departed. (*Id.*) Sometime after the employees left the Property on March 27, 2024, and before the attempted reopening of the Property at approximately 10:00 a.m. on the morning of March 28, 2024, one or more burglars breached a demising wall which separated the office or workroom at the rear of the Property, disabled the Alarm System equipment located in the office or workroom, used a torch to open a safe which contained a substantial portion of Venzio's valuable jewelry inventory, damaged or stole certain displays on the Property, and caused other damage to the Property. (*Id.* ¶ 8.) The perpetrator(s) then departed the Property, taking with them substantial portions of Venzio's jewelry inventory. (*Id.* ¶ 9.) The perpetrator(s) have not been apprehended and none of the inventory that was stolen from the Property has been recovered. (*Id.* ¶ 10.) Venzio made a claim under the Policy for the damages, losses and expenses related to the burglary, and pursuant to the Policy, Jewelers made payments to Venzio of $966,669.56. (*Id.* ¶ 12.)

The Alarm System provided by Defendant was equipped with numerous burglary and intrusion signaling devices that Defendant represented were able to detect an intrusion, or attempted intrusion, and provide contemporaneous notification of signals from such devices to law enforcement authorities, and designated representatives of Venzio. (*Id.* ¶ 16.) No signals were transmitted to law enforcement or Venzio's representatives before, during, or after the burglary.

(*Id.* ¶ 18.) Venzio's representatives first became aware of the burglary when they arrived at the Property for business the next day. (*Id.* ¶ 19.) The reason no signals were transmitted from the Alarm System before, during or after the burglary was because the perpetrator(s) of the burglary had cut or otherwise compromised the communication lines that were intended to transmit signals from the Alarm System before the Alarm System's signaling devices had activated. (*Id.* ¶ 20.)

Plaintiffs allege that pursuant to the Policy, operation of law, and its payments to Venzio, Jewelers is subrogated to Venzio's rights against Defendant. (*Id.*) Additionally, Venzio seeks to recover in its own name for its uninsured losses. (*Id.* ¶ 13.) Plaintiffs further allege that if the Alarm System had worked as represented, the burglary should have triggered its signaling devices, resulting in contemporaneous notification to law enforcement and to Venzio's representatives. (*Id.* ¶ 17.) Plaintiffs allege that Defendant knew the Alarm System was not equipped with Line Security and was, therefore, not qualified to be certified as a U.L. Certified system. (*Id.* ¶ 29.) Underwriters Laboratories is the entity responsible for issuing the certificates that state that an alarm system is a U.L. Certified system. (*Id.* ¶ 30.) Plaintiffs also allege that Defendant fraudulently arranged for Underwriters Laboratories to issue certificates which stated, inaccurately, that the Alarm System was a U.L. Certified system. (*Id.* ¶ 31.) Defendant represented to Underwriters Laboratories that the Alarm System met its requirements for a U.L. Certified system, when it did not because, among other things, the system was not equipped with Line Security. (*Id.* ¶ 32.) Plaintiffs further allege that Venzio relied on the issued U.L. Certificates as did Jewelers. (*Id.* ¶¶ 33-37.)

**B.    Procedural Background**

Plaintiffs initially brought this case in the Law Division of the New Jersey Superior Court, Ocean County, New Jersey, and Defendant removed it to this Court. (Notice of Removal, ECF No. 1.) The Complaint includes two causes of action: (1) fraud based on Defendant's false

representations made to Underwriters Laboratories to induce them to issue U.L. Certificates that Venzio and Jewelers relied on (Count One); and (2) violation of the New Jersey Consumer Fraud Act, New Jersey Statutes Annotated § 56:8-19 ("NJCFA") (Count Two). (Compl. ¶¶ 14-40.)

On April 25, 2025, Defendant filed the instant Motion to Dismiss. (Def.'s Mot. to Dismiss, ECF No. 7.) Plaintiffs opposed (Pls.' Opp'n Br., ECF No. 11), Defendant replied (Def.'s Reply Br., ECF No. 19), and Plaintiff filed a Motion for Leave to file a Sur-Reply (Pls.' Sur-Reply Br., ECF 20-1).

## II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure[3] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint

---

[3] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

Defendant makes five arguments in support of dismissing the Complaint: (1) Jewelers lacks standing to bring a NJCFA claim; (2) Venzio contractually waived all subrogation rights of its insurer against Defendant and therefore Defendant and Jewelers have no contractual relationship; (3) Jewelers does not and cannot claim that Defendant intended Jewelers to rely on the U.L. certifications; (4) Venzio and Defendant's contractual agreement requires Venzio to "look exclusively to its insurer and not to [Defendant for payment] in the event of such a loss, damage or injury"; and (5) the NJCFA claim fails because Venzio pleads no fraudulent or deceptive advertising or selling practices. (Def.'s Mov. Br. 9-19, ECF No. 7-1.)

Before turning to the adequacy of Plaintiffs' pleadings, the Court addresses a threshold issue. Defendant requests that the Court incorporate by reference the following materials: (1) the 2017 Agreement; (2) certain U.L. Certificates; (3) a 2014 agreement between Venzio and Defendant (the "2014 Agreement"); and (4) the standard and safety information ("Standard and Safety Information"). (Def.'s Mov. Br. 2 n.1; Def.'s Reply Br. 2; *see also* Ex. A to Mot. to Dismiss (2017 Agreement), ECF No. 7-2; Ex. B to Mot. to Dismiss (U.L. Certificates), ECF No. 7-3; Ex. A to Def.'s Reply Br. (2014 Agreement), ECF No. 19-1; Ex. B to Def.'s Reply Br. (Standard and Safety Information), ECF No. 19-2.) In opposition to the Court's incorporation by reference of the

2014 Agreement and the Standard and Safety Information, Plaintiffs argue that the documents do not provide the basis for Plaintiffs' claims, are not referenced in the Complaint, and that the 2017 Agreement supersedes any prior agreement. (Pls.' Sur-Reply Br. 1-4, ECF No. 20-1.)

When "decid[ing] a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). An exception, however, to the general rule holds that when a document attached to a motion to dismiss is "integral or explicitly relied upon in the complaint," the document "may be considered 'without converting the motion into one for summary judgment.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). The purpose of the rule against inclusion of documents is lack of notice to a plaintiff. *Id.* When a plaintiff has actual notice and has relied on those documents in framing the complaint, that concern is dissipated. *Id.* It therefore "is not unfair to hold a plaintiff accountable for the contents of documents it must have used in framing its complaint, nor should a plaintiff be able to evade accountability for such documents simply by not attaching them to [their] complaint." *Id.* at 250. What is critical in this determination "is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited." *Id.* at 249 (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426).

Defendant argues that the 2017 Agreement and U.L. Certificates are relied upon in Plaintiffs' Complaint. (Def.'s Mov. Br. 2 n.1.) The Court agrees and finds good cause to consider the 2017 Agreement and the U.L. Certificates. Plaintiffs' claims rest on both the U.L. Certificates, which are the basis of Plaintiffs' fraud claims, and the 2017 Agreement which, Plaintiffs claim,

contractually obligated Defendant to ensure that the Alarm System was U.L. Certified. (Compl. ¶¶ 21-24, 31-37.)

The Court, however, does not find good cause to consider the 2014 Agreement or the Safety and Standards Information because those documents are not integral to or relied on by Plaintiffs to state their claims. *See Schmidt*, 770 F.3d at 249. Defendant attaches these documents to its Reply Brief, but notably, makes no argument as to why the Court should consider them. (*See generally* Def.'s Reply Br., ECF No. 19.) Moreover, as Plaintiffs contend, the 2017 Agreement specifically "supersedes any prior or contemporaneous oral or written agreements or understandings." (Ex. A to Mot. to Dismiss § 3.)

### A.    Fraud – Count One

Count One asserts a fraud claim against Defendant. To state a claim of fraud under New Jersey law, a plaintiff must allege: "(1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367-68 (N.J. 1997)). Claims of fraud must also meet the heightened pleading standard of Rule 9(b). *Id.* Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff "may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). A plaintiff "also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* (citations omitted).

Here, Plaintiffs satisfy the Rule 9(b) pleading standard because the Complaint alleges with sufficient particularity that Defendant fraudulently arranged for Underwriters Laboratories to issue the certificates on September 27, 2022, September 27, 2019, and September 28, 2017, by misrepresenting that the Alarm System met the requirements for a U.L. Certified system knowing that Venzio would rely on those certificates' authenticity. (Compl. ¶¶ 21-32.)

As Plaintiffs have satisfied Rule 9(b), the Court will address Defendant's remaining arguments. Defendant argues that the 2017 Agreement required Venzio to "look exclusively to its insurer and not [Defendant] to pay [Venzio] in the event of such a loss, damage or injury," that Venzio contracted to limit its liability, and that the claims should be dismissed because its remedy is contractual, and its fraud claim is barred by the economic loss doctrine. (Def.'s Mov. Br. 13-16.) Defendant also argues that Jewelers has no contractual relationship to it, does not allege that Defendant intended Jewelers to rely on the U.L. Certification, and that the fraud claims fail because Venzio waived its subrogation rights and these claims are barred by the economic loss doctrine. (Def.'s Mov. Br. 11-13.)

"In New Jersey, parties to a contract may agree to limit their liability as long as the limitation does not violate public policy." *Pro. Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 F. App'x 161, 167 (3d Cir. 2007) (citing *Mayfair Fabrics v. Henley*, 226 A.2d 602, 605 (N.J. 1967)). The law, however, "is well-settled that fraud, be it common law or statutory, provides a basis for rescinding a contract." *Id.* at 167-68. Accordingly, if Plaintiffs "were deceived into entering [the 2017 Agreement] by [Defendant's] alleged misrepresentations and omissions," Defendant "could not rely on the protection of the limitation of liability provision contained in the [2017 Agreement]." *Id.* (quoting *Wärtsilä NSD N. Am., Inc. v. Hill Int'l, Inc.*, 342 F. Supp. 2d 267, 289 (D.N.J. 2004)); *see also Turkish v. Kasenetz,* 27 F.3d 23, 27-28 (2d Cir. 1994) ("It is well

settled that parties cannot use contractual limitation of liability clauses to shield themselves from liability for their own fraudulent conduct.") (citation omitted).

The basis of Plaintiffs' fraud claims, however, the U.L. Certificates here—dated September 28, 2017, September 27, 2019, and September 27, 2022—were all part of the performance of the 2017 Agreement, which Venzio and Defendant entered into prior to their issuance. (Compl. ¶¶ 21, 31.) It follows that because the Certificates were issued after the 2017 Agreement, Plaintiffs could not have been deceived into entering into the 2017 Agreement by them because they were issued after the fact. *C.f. Pro. Cleaning & Innovative Bldg. Servs.*, 245 F. App'x at 167. Accordingly, Plaintiffs' fraud claim fails.

Even assuming there was reliance, however, Plaintiffs' claim would fail because it is barred by the economic loss doctrine. "Generally, the economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which they are entitled only by contract." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 308 (D.N.J. 2009) (citing *Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 276 (N.J. 2002)). "[F]raud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action." *Carrow v. Fedex Ground Package Sys's, Inc.*, No. 16-3026, 2017 WL 1217119, at *6 (D.N.J. Mar. 30, 2017) (quoting *Network Commodities, LLC v. Golondrinas Trading Co.*, No. 11-3119, 2013 WL 1352234, at *7 (D.N.J. Apr. 1, 2013)). "For instance, a plaintiff may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement." *Arcand*, 673 F. Supp. 2d at 308 (citation omitted).

Here, Plaintiffs argue in opposition that the procurement of fraudulent U.L. Certificates was extrinsic to the performance of the contract. (Pls.' Opp'n Br. 12.) Plaintiffs contend that while

Defendant was contractually obligated to furnish and maintain a U.L. Certified alarm system, there was nothing in the contract that required it to procure or arrange for the issuance of U.L. Certificates. (*Id.*) Plaintiffs' Complaint, however, alleges otherwise. (Compl. ¶ 22 ("As part of its contractual obligations to Venzio, [Defendant] was required to ensure that the Alarm System was, at all times, a 'U.L. . . . Certified' system.").) As such, the 2017 Agreement required Defendant to procure U.L. Certificates. (*See id.*) Because the contract the parties entered into covers Defendant's alleged conduct, Plaintiffs' fraud claim is barred by the economic loss doctrine.

The Court, therefore, finds that Plaintiffs have failed to adequately plead Count One because this claim is barred by the economic loss doctrine.

### B.    NJCFA Claim – Count Two

In Count Two of the Complaint, Plaintiffs assert a claim for violations of the NJCFA against Defendant. (Compl. ¶¶ 38-40.) The NJCFA "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 593 (D.N.J. 2016) (citation omitted). To establish a cause of action under the NJCFA, a consumer must plead that: (1) the defendant engaged in an unlawful practice; (2) the plaintiff suffered an ascertainable loss; and (3) there is a causal relationship between the unlawful conduct and the ascertainable loss. *Veyhl v. State Farm Fire & Cas. Co.*, No. 21-10112, 2021 WL 6062304, at *4 (D.N.J. Dec. 22, 2021) (citing *Frederico v. Home Depot*, 507 F.3d 188, 202-03 (3d Cir. 2007)).

Defendant argues that: (1) Jewelers does not have standing to bring a claim under NJCFA because it is not the type of consumer that NJCFA is intended to protect, and in similar cases, New Jersey courts have declined to find that insurers qualify as consumers under the NJCFA (Def.'s Mov. Br. 9); (2) Venzio expressly waived the subrogation rights of its insurer in the 2017

Agreement (Def.'s Mov. Br. 10); and (3) Venzio contractually agreed upon a limitation of liability. (Def.'s Mov. Br. 18).

First, the Court must look at the character of the transaction to determine whether a plaintiff has standing under the NJCFA. *Wilhelm Reuss GmbH & Co KG, Lebensmittel Werk v. E. Coast Warehouse & Distrib. Corp.*, No. 16-4370, 2018 WL 3122332, at *3 (D.N.J. June 26, 2018). "The NJCFA 'seeks to protect consumers who purchase goods or services generally sold to the public at large.'" *Id.* (quoting *Cetel v. Kirwan Fin. Gp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (internal quotations omitted). The NJCFA accordingly "is not intended to cover every transaction that occurs in the marketplace[,] but, rather, [i]ts applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." *Cetel*, 460 F.3d at 514 (alterations in original) (internal citations and quotations omitted). Under the NJCFA, one must be a "consumer" to have standing to sue. *See City Check Cashing, Inc. v. Nat'l State Bank*, 582 A.2d 809, 811 (N.J. Super. Ct. App. Div. 1990) (citing *Hundred E. Credit Corp. v. Eric Schuster*, 515 A.2d 246, 248-49 (N.J. Super. Ct. App. Div. 1986)). Courts, however, have applied the NJCFA to business entities "who purchase goods and services for use in their business operations." *Prescription Counter v. AmerisourceBergen Corp.*, No. 04-5802, 2007 WL 3511301, at *14 (D.N.J. Nov. 14, 2007).

Here, the Court finds that Jewelers lack standing to bring a NJCFA claim because it did not purchase the Alarm System for its own use, nor did it purchase the alarm system at all. *See Standard Fire Ins. Co. v. MTU Detroit Diesel, Inc.*, No. 07-3827, 2009 WL 2568199, at *5 (D.N.J. Aug. 13, 2009) (finding that an insurance company "did not purchase the [insured] yacht . . . for its own use" but "contracted with [its insuree] to receive a stream of payments . . . in return for its promise to insure the yacht"). Moreover, as the Court in *Standard Fire* found, the "fact that [the

insurance company's] subrogee . . . might qualify as a consumer under the act does not change the Court's analysis." *Id.*

Second, Venzio expressly waived all subrogation rights of its insurer against Defendant in the 2017 Agreement. (Ex. A to Def.'s Mot. to Dismiss § V(E) ("[Venzio] releases and waives for itself and its insurer all subrogation and other rights to recover from [Defendant] arising as a result of paying any claim for loss, damage or injury of [Venzio] or another person.").) Such a waiver of subrogation provision is valid under New Jersey Law. *See e.g.*, *ACE Am. Ins. Co. v. Am. Med. Plumbing, Inc.*, 206 A.3d 437, 440 n.3 (N.J. Super. Ct. App. Div. 2019) ("[T]he enforceability of a subrogation waiver in principle . . . is well-settled."); *Universal N. Am. Ins. Co. v. Bridgepointe Condo. Ass'n, Inc.*, 195 A.3d 543, 552 (N.J. Super. Law Div. 2018) (holding that a "waiver of subrogation provision [wa]s enforceable"); *Skulskie v. Ceponis*, 962 A.2d 589, 590-91 (N.J. Super. Ct. App. Div. 2009) (upholding waiver-of-subrogation clause in a condominium unit owner's insurance policy). For these reasons, Jewelers lacks standing to bring a NJCFA claim.

Third, "[a]n NJCFA claim is not barred by the economic loss doctrine and can be asserted alongside a breach of contract claim when a plaintiff alleges fraud in the inducement of the contract." *Lukacs v. Purvi Padia Design LLC*, No. 21-19599, 2022 WL 2116868, at *5 (D.N.J. June 13, 2022). As discussed above, the U.L. Certificates here, however—dated September 28, 2017, September 27, 2019, and September 27, 2022—were all part of the performance of the 2017 Agreement, which Venzio and Defendant entered into prior to their issuance. (Compl. ¶¶ 21, 31.) "By its terms, . . . misconduct [pursuant to the NJCFA] must occur in connection with the sale itself, and not occur as a separate violation subsequent to contract formation." *Gengo v. Jets Stadium Dev., LLC*, No. 18-8012, 2018 WL 4144686, at *7 (D.N.J. Aug. 30, 2018). Here, because Defendant's alleged violations took place *after* the 2017 agreement, Venzio fails to adequately

plead a violation of the NJCFA. *See State Farm Fire & Cas. Co. v. ADT Sec. Servs., Inc.*, No. 10-959, 2010 WL 2998412, at *3 (D.N.J. July 21, 2010) ("It appears that New Jersey law requires, at a minimum, some tie between the NJCFA violation and the formation of the contract."); *Court Plaza Assocs. v. Wausau Tile, Inc.*, No. A-249-14, 2015 WL 7783256, at *3 (N.J. Super Ct. App. Div. Dec. 4, 2015) ("To constitute a [NJCFA] violation, the misrepresentation must be made at the time of or prior to formation of the contract to induce the creation of the contract."). As such, the Court finds that Plaintiffs fail to sufficiently plead an NJCFA claim.

## IV.   CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss is granted, and the Complaint is dismissed without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: 10/6/2025

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**